# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-51081

United States Court of Appeals
Fifth Circuit

**FILED**

April 9, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

                                        Plaintiff–Appellee,

versus

TREVIN ROUNDS,

                                        Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Trevin Rounds was found guilty by a jury of being in possession of child pornography in violation of 18 U.S.C. § 2252(a)(4) (Count One) and using a facility of interstate commerce to persuade, induce, entice, or coerce a juvenile to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (Count Two).  He raises several issues on appeal, and we affirm.

No. 12-51081

I.

Before trial, Rounds moved to suppress "any and all photographic and/or video evidence that was gathered by the seizure and subsequent search of his phone." The district court held an evidentiary hearing at which Rounds and sheriff's deputies Jeffery Whitson and Georgina Maritz testified. The court made the following findings: (1) Because Whitson "could not have viewed the contents of the phone without assistance from Defendant," Rounds consented to the search; and (2) "[b]ased on the totality of the circumstances . . . [,] consent was freely and voluntarily given." Accordingly, the court denied the motion to suppress.

Shortly before trial, the government indicated that it planned to call Sheretta Trahan, Jane Doe's godmother; because she had not been previously listed as a witness, defense counsel objected. The court (1) continued the trial for one hour to allow counsel an opportunity to meet with Rounds and Trahan and (2) delayed her testimony for one day. An hour later, counsel informed the court that he had been able to meet the witness and to confer with his client, and the witness had answered his questions. Although the court had delayed the witness from testifying for another day, because counsel told the court "I'm ready to go forward," Trahan testified the same day.

Similarly, the night before trial, the government disclosed its intent to introduce Tagged.com messages between Jane Doe and Rounds. Defense counsel again objected to that late disclosure. In response, the court granted a one-day continuance and again delayed, for one day, the government's introduction of that evidence. Again, defense counsel indicated that he was ready to go forward.

II.

The following evidence was presented at trial: In February 2012, Rounds

2

contacted a fourteen-year-old female ("Jane Doe"), living in Houston, on the social networking website Tagged.com. She and Rounds began texting. She initially lied to Rounds about her age[1] but testified about several incidents that made him aware of her real age. First, she acknowledged that the father of one of her former classmates saw her with Rounds and told Rounds that she was fourteen. Second, she ran away from her godmother's house on February 23, 2012. Before running away, Trahan asked Jane to place a call to Rounds during which Trahan told Rounds that Jane was fourteen and to stay away from her. Trahan's testimony corroborates the phone call.

In early March, after she ran away from home, Jane stayed approximately twelve nights with Rounds in a Houston hotel room and had sex there. Around March 12, Jane and Rounds got into an argument about her talking to other men online, including Brian Phea, who bought her a bus ticket from Houston to Amarillo. Rounds drove Jane to the bus station, and shortly after she arrived in Amarillo, she and Phea went to Odessa, where Phea was abusive, tasered her, and hit her, resulting in a ruptured eardrum. At some point in Odessa, Jane wanted to get away from Phea and return to Houston; Rounds agreed to drive to Odessa and pick her up from a motel where she was staying. During that time, Jane and Rounds continued to communicate via text messages and phone calls. Rounds eventually picked up Jane in Odessa on March 17.

Later that evening, Rounds's vehicle was pulled over in Eden, Texas, for a traffic violation. Whitson testified that he and his partner, Maritz, conducted the traffic stop. Whitson stated that during the course of the stop he obtained consent to search the vehicle and Rounds's iPhone, which was in the vehicle.

---

[1] In their initial conversations, Jane asked Rounds to get her a fake identification card indicating that she was eighteen years old. At that time, she told Rounds she was seventeen.

No. 12-51081

At some point during the stop, Whitson decided to take Rounds and Jane to the police station, where Whitson again looked through the iPhone. This search uncovered a video that showed Rounds having intercourse with a young woman later determined to be Jane Doe. Jane's testimony confirmed that the video, which was admitted as evidence, was of Rounds and her having sex. Whitson also said that he seized a second cell phone—a flip phone that was being used by Jane—from Rounds's vehicle. Maritz's testimony corroborated much of Whitson's.

The government presented Lisa Upton as an expert in telephone cell site analysis. She testified that she had performed an analysis on the phone number registered to the iPhone seized from Rounds. As part of that analysis, she produced five maps pertaining to phone calls made from and received by Rounds's iPhone on March 17. Those maps showed that the iPhone was traveling within Texas, having left the Houston area around 5:00 a.m. on March 17, and arriving in Odessa about 1:00 p.m. Beginning at 12:20 a.m. on March 17, Rounds's iPhone had five consecutive incoming phone calls from the phone number associated with Jane Doe, followed by two outgoing calls to Jane's phone number. Next, between 3:41 a.m. and 4:20 a.m., Rounds's iPhone had two outgoing calls to, and two calls from, Jane's number.

Heath Hardwick, a Special Investigative Agent for the Department of Homeland Security, testified as an expert in computer forensics, including cell phone forensics. Hardwick analyzed the two phones seized during the March 17 traffic stop and produced a report for the iPhone seized from Rounds. The government introduced several text messages between Rounds and Jane.

III.

Rounds brings five challenges on appeal. First, he questions the sufficiency of the evidence on Count Two. Second, he contends venue was not

No. 12-51081

proper in the Western District of Texas.  Third, he maintains that he did not have an adequate opportunity to prepare for trial because the government had a material witness testify at trial without adequate notice to the defense and did not timely disclose Exhibit 14.  Fourth, Rounds avers that the government failed to disclose *Brady* material[2] when it did not provide the defense a copy of the notes made during Round's initial arrest.  Fifth, Rounds claims the court erred in denying his motion to suppress.

## IV.

The district court denied Rounds's Federal Rule of Criminal Procedure 29 motion, which challenged both the sufficiency of the evidence and venue as to Count Two.  By moving for a judgment of acquittal at the close of the government's case and at the close of all the evidence and by requesting the jury to be instructed on venue, Rounds has preserved both of these issues for appeal.[3]

## A.

"[R]eviewing courts must affirm a conviction if, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Vargas-Ocampo*, 2014 U.S. App. LEXIS 5575, at *2 (5th Cir. Mar. 26, 2014) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 312 (1979) (emphasis in *Jackson*).  "[I]t is

---

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963).

[3] *See United States v. Frye*, 489 F.3d 201, 207 (5th Cir. 2007); *United States v. Santos*, 203 F. App'x 613, 618 (5th Cir. 2006) (per curiam) ("A defendant may waive his objection to venue if he fails to raise the issue before trial.  However, the issue is not waived if the trial testimony puts venue at issue, and the defendant objects or requests an instruction.").

the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). In assessing the sufficiency of the evidence, this court considers both circumstantial and direct evidence. *See United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1834 (2013). "The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.*

Count Two charges Rounds with coercion and enticement in violation of 18 U.S.C. § 2422(b), which requires the government to prove that (1) Rounds used a facility of interstate commerce to commit the offense; (2) he was aware that Jane Doe was younger than eighteen; (3) by engaging in sexual activity with Jane, he could have been charged with a criminal offense under Texas law; and (4) he knowingly persuaded, induced, enticed, or coerced Jane to engage in criminal sexual activity.[4] Focusing on the fourth element, Rounds avers that the evidence does not suggest that he pressured and persuaded Jane to come with him. According to Rounds, the record instead demonstrates that Jane "practically had to beg him to get him to come" to Odessa. Rounds therefore urges that he cannot have persuaded, induced, enticed, or coerced Jane to engage in criminal sexual activity. In contrast, the government contends that "[g]iven the continuing nature of the offense of coercion and enticement, it was entirely reasonable for the jury to look at the totality of the circumstances and conclude that Rounds engaged in a coercive and enticing communication with [Jane] while she was in Odessa."

---

[4] Rounds does not contest that he (1) had an illegal sexual relationship with Jane Doe; (2) was aware of her age; and (3) used Tagged.com and text messages to communicate with her. We, therefore, do not address the sufficiency of the evidence as to the first three elements.

No. 12-51081

Evidence can establish that a defendant intended to induce, persuade, entice, or coerce a minor by sending the minor sexually explicit messages.  In *United States v. Lundy*, 676 F.3d 444, 447 (5th Cir. 2012), for example, we concluded that a rational jury could have found that the defendant enticed a minor in light of the fact that he "made contact with and engaged in a string of sexually laced text message and phone conservations with a girl he thought to be 15 year[s] old."  Similarly, in *United States v. Barlow*, 568 F.3d 215, 219 (5th Cir. 2009), we affirmed the conviction, observing that the defendant "emailed [the minor] multiple pornographic pictures . . . [and] repeatedly asked her to send explicit pictures of herself" and that "the online conversations were usually about sex . . . ."[5]  "Whether there was inducement, persuasion, or enticement is a question of fact for the jury to decide." *Lundy*, 676 F.3d at 450.[6]  Even if the defendant does not explicitly reference sex in his communications, a jury can find that he intended to induce, persuade, entice, or coerce the minor based on the broader context of the communications.

Contrary to Rounds's suggestion, the trial record does not compel the finding that Jane Doe begged him to come get her from Odessa.[7]  And, in any

---

[5] *See also United States v. Broussard*, 669 F.3d 537, 550 (5th Cir. 2012); *United States v. Van Velkinburgh*, 342 F. App'x 939, 941 (5th Cir. 2009); *United States v. Farner*, 251 F.3d 510, 511 (5th Cir. 2001).

[6] *See also United States v. Goetzke*, 494 F.3d 1231, 1235 n.3 (9th Cir. 2007) (per curiam) ("To 'persuade' is 'to induce by argument, entreaty, or expostulation into some mental position'; to 'induce' is 'to move and lead (as by persuasion or influence)'; and to 'entice' is 'to draw on by arousing hope or desire.'" (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 757, 1154, 1687 (unabridged ed. 1993))).

[7] After a few days of Jane's returning to Odessa, Rounds initiated the conversation by asking her via text, "u coming back or what?"  Shortly thereafter, Rounds wrote, "I come get you."  Next, after asking Jane whether she trusted Rounds or Phea, Rounds wrote, "So go let me come or not."  A few hours later, when Jane agreed to let Rounds come get her, he states, "so u sure u want to come back to me??" and "lol u like the nigga u with."  Jane responded, "bye stp textin me."  After a brief period, Rounds initiated the conversation again, asking, "u not talking to me no more?"  It was not until hours later on the morning of March 17 (and

7

## No. 12-51081

event, our inquiry focuses on the defendant's intent, not the minor's.[8]

The government presented extensive evidence demonstrating that Rounds and Jane had an illegal sexual relationship that continued for a substantial period of time. Rounds does not challenge that. Therefore, although many of the text messages from Rounds do not appear to be sexually explicit, the jury could have understood them in light of Rounds and Jane's illegal sexual relationship. Drawing every inference in favor of the verdict, a jury could have understood these messages as Rounds's attempt to control and continue the criminal sexual relationship. Moreover, Rounds sent Jane at least one sexually-explicit message: "Would you let a man lick your anal area?" As the government emphasizes, that message was the "opening salvo," by which the jury could have understood the entire relationship.

In light of that relationship, the sexually-explicit Tagged.com message, and numerous other text messages designed to have Jane return to him, a jury could have reasonably believed that Rounds intended to coerce her to continue having a sexual relationship with him. There is sufficient evidence on Count Two.

### B.

"We review the denial of a motion for judgment of acquittal *de novo*." *United States v. Garcia Mendoza*, 587 F.3d 682, 686 (5th Cir. 2009). Where the motion questions venue, we affirm the denial "if, viewing all the evidence

---

after Jane had sent Rounds the address at the hotel in Odessa) that she sent him a text message asking him to answer his phone because Phea had assaulted her.

[8] *See United States v. Olvera*, 687 F.3d 645, 647–48 (5th Cir. 2012) (per curiam) (holding that the defendant need not communicate directly with the minor victim); *Barlow*, 568 F.3d at 219 n.10 (5th Cir. 2009) ("To be clear, the statute does not require that the sexual contact occur, but that the defendant sought to persuade the minor to engage in that contact.").

in the light most favorable to the government, a rational jury could conclude, from the evidence presented at trial, that the government established venue by a preponderance of the evidence." *Id.*

"The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. CONST. art. III, § 2, cl. 3. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. CONST. amend. VI.[9] To determine whether venue is appropriate, we perform a two-step inquiry: "[A] court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). "To identify the conduct constituting the offense, we scrutinize the statute of conviction." *United States v. Clenney*, 434 F.3d 780, 781 (5th Cir. 2005).

Unless the charged statute provides otherwise, a proper venue of a continuing offense[10] is "any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). Accordingly, venue can be based on "evidence showing the commission of *any single act* that was part of the beginning, continuation, or completion of the crime." *United States v. Fells*, 78 F.3d 168, 171 (5th Cir. 1996) (emphasis added). Circumstantial evidence can sufficiently establish venue. *See United States v. Loe*, 248 F.3d 449, 465 (5th Cir. 2001).

---

[9] "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." FED. R. CRIM. P. 18.

[10] A continuing offense is "a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force." *United States v. Asibor*, 109 F.3d 1023, 1031 (5th Cir. 1997) (quoting *United States v. Midstate Horticultural Co.*, 306 U.S. 161, 166 (1939)).

No. 12-51081

Section 2422(b) constitutes a continuing offense. *See United States v. Byrne*, 171 F.3d 1231, 1235 n.2 (10th Cir. 1999). For proper venue, therefore, the government needs to have put forward sufficient evidence showing that Rounds committed "*any single act* that was part of the beginning, continuation, or completion" of Count Two in the Western District.[11] To this end, Count Two alleges "on or about March 17, 2012, in the Western District of Texas and elsewhere, [Rounds] did use a facility of interstate and foreign commerce, to wit: a cellular telephone, to knowingly persuade, induce, and entice an individual who had not attained the age of 18 years to engage in sexual activity . . . ."

The government points to two ways to establish venue in the Western District: (1) phone calls and text messages sent on or about March 17 from Rounds to Jane, who was in Odessa in that district; and (2) Rounds's presence in Odessa on or about March 17. Because the phone calls and text messages sent on or about March 17 to the minor who was in the Western District constitute acts that were part of the completion of Count Two, the government sufficiently established venue.[12] We therefore do not need to address whether Rounds's presence in Odessa sufficiently established venue.

## V.

Rounds argues that he did not have an adequate opportunity to prepare for trial because the government had a "material witness," Trahan, testify without adequate notice to the defense. Rounds similarly complains that the

---

[11] Eden (Concho County) is in the Northern District; Odessa (Ector County) is in the Western District; and Houston (mostly Harris County) is in the Southern District.

[12] *See United States v. Caldwell*, 16 F.3d 623, 625 (5th Cir. 1994) ("[I]t was not in error for the trial judge to find venue in the district in which the calls were received."); *United States v. Lewis*, 676 F.2d 508, 511 (11th Cir. 1982); *United States v. Strickland*, 493 F.2d 182, 187 (5th Cir. 1974).

No. 12-51081

government did not timely disclose Exhibit 14—the Tagged messages between Rounds and Jane Doe.  Rounds claims that the untimely disclosure prejudiced his defense by disallowing him an opportunity to investigate.  Rounds can be understood to be making one of two arguments.  One, he could be maintaining that the district court erred by allowing the government to introduce this evidence in light of the delayed disclosure.  Or two, he could be suggesting that the court erred by not granting him another continuance to give him more time to investigate the government's evidence.

A.

Beginning with the first theory, this court "review[s] a district court's evidentiary rulings for abuse of discretion, subject to harmless-error analysis." *United States v. Girod*, 646 F.3d 304, 318 (5th Cir. 2011) (citation and internal quotation marks omitted).  "[F]or any of the evidentiary rulings to be reversible error, the admission of the evidence in question must have substantially prejudiced [the defendant's] rights."  *United States v. Sanders*, 343 F.3d 511, 519 (5th Cir. 2003).  We consider any error to be harmless when "substantial evidence supports the same facts and inferences as those in the erroneously admitted evidence."  *United States v. El-Mezain*, 664 F.3d 467, 526 (5th Cir. 2011).

First, assuming Rounds has challenged the admission of Trahan's testimony, he needs to demonstrate that its admission substantially prejudiced his rights.  Even assuming he could somehow show that the court abused its discretion, the decision to allow Trahan to testify is not reversible error.  The government called Trahan to prove that Rounds knew Jane Doe's age.  The trial record, however, contains other substantial evidence demonstrating that

11

No. 12-51081

Rounds knew she was younger than eighteen.[13]  Second, assuming Rounds intends to challenge the admission of Exhibit 14, and further assuming he even preserved this issue, he has not provided any argument or authority demonstrating that the court abused its discretion in allowing this evidence in spite of the delayed disclosure.

B.

Addressing Rounds's second theory, we consider the decision whether to grant a continuance to be within the sound discretion of the trial court.  *See United States v. Shaw*, 920 F.2d 1225, 1230 (5th Cir. 1991).  We reverse a denial "only when the district court has abused its discretion and the defendant can establish that he suffered serious prejudice."  *United States v. Castro*, 15 F.3d 417, 423 (5th Cir. 1994).  In assessing whether the court abused its discretion, this court considers the "totality of the circumstances," including

> (a) the amount of time available; (b) the defendant's role in shortening the time needed; (c) the likelihood of prejudice from denial; (d) the availability of discovery from the prosecution; (e) the complexity of the case; (f) the adequacy of the defense actually provided at trial; and (g) the experience of the attorney with the accused.

*United States v. Walters*, 351 F.3d 159, 170 (5th Cir. 2003).

The district court did in fact grant a one-day continuance to both Trahan's testimony and the admission of Exhibit 14.  After an hour's delay in the start of the trial, defense counsel confirmed multiple times on the record that he was "ready to go forward" as to both the testimony and the admission of Exhibit 14.  Insofar as Rounds now believes he was entitled to a further

---

[13] For example, Jane Doe testified that, in their initial conversations, she asked Rounds to get her a fake identification card indicating that she was eighteen; at that time, she told Rounds she was seventeen.  She also testified about an incident in which one of her former classmate's father saw her with Rounds and told Rounds she was fourteen.

12

continuance, he invited any possible error by conceding he was ready to go forward. *See United States v. Green*, 272 F.3d 748, 754 (5th Cir. 2001).

VI.

Rounds contends that the government violated *Brady* when it failed to provide the defense with a copy of the notes that Maritz made the night of Rounds's initial arrest. Maritz used the notes during her testimony at the suppression hearing, which revealed that the notes included (1) the passcode for Rounds's cellphone; (2) the time at which Rounds consented to the search of his cellphone; and (3) "the initial identifying information from the juvenile."

Because Rounds did not raise a *Brady* argument in the district court, we review only for plain error. *See United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005). The plain-error standard requires first that there be error, a question we consider *de novo*. *United States v. Garza-Lopez*, 410 F.3d 268, 272–73 (5th Cir. 2005). "To establish a *Brady* violation, the defendant must prove that (1) the prosecution suppressed evidence, (2) it was favorable to the defendant, and (3) it was material." *United States v. Brown*, 650 F.3d 581, 587–88 (5th Cir. 2011). Whether the prosecutor acted in good faith is not relevant. *See Kyles v. Whitley,* 514 U.S. 419, 432 (1995).

Rounds has not shown error, plain or otherwise. Even if the government somehow suppressed evidence, Rounds has not demonstrated that the notes would have been exculpatory. The cellphone passcode and the time notation demonstrate only that Rounds consented to the search of his cellphone, a fact not favorable to him. The notes identifying Jane Doe similarly would not have helped him. The *Brady* claim has no merit.

VII.

Rounds challenges the search of his cellphone, claiming that (1) he never

No. 12-51081

consented to it, (2) even if he did, such consent was not voluntary, and (3) because the arresting officers accessed more than merely his text-message and call records, the full search exceeded the scope of a search incident to a lawful arrest.  Rounds contends any evidence obtained was illegal fruit.

On appeal of the denial of a motion to suppress, this court reviews the district court's fact findings for clear error and its legal conclusions *de novo*. *See United States v. Gomez*, 623 F.3d 265, 268 (5th Cir. 2010).  "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001).  Where a court has based its denial on live testimony, "the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005).  Finally, we review the evidence in the light most favorable to the government as the prevailing party.  *Id.*

Unless an exception applies, an officer, before conducting a search, must (1) have probable cause to believe that contraband or evidence of a crime will be found in a particular place and (2) obtain a warrant.  A search conducted pursuant to consent, however, remains one of the well-settled exceptions to the Fourth Amendment's warrant and probable-cause requirements.  *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997).  To rely on this exception, the government must prove, by a preponderance of the evidence,that the defendant voluntarily consented.  *Id.*  We treat the voluntariness of consent as a factual finding that we review for clear error, *United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002), considering the following non-exclusive six factors:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will

14

be found.

*United States v. Jones*, 234 F.3d 234, 242 (5th Cir. 2000). No single factor is dispositive. *See id.* The prosecutor's "burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968)). Consent may not be "the product of duress or coercion, express or implied . . . ." *United States v. Mendenhall*, 446 U.S. 544, 557 (1980).

Rounds's first claim—that he never consented to any search of his cellphone—amounts to nothing more than a repetition of the factual arguments made during the suppression hearing and rejected by the district court. Although Rounds disagrees with the court's credibility determination, he provides no reason why the court clearly erred.

As to his second contention, Rounds argues that the consent cannot "have been voluntary and intelligent as to the sexually explicit videos since [the arresting officers'] discussion was directed to the issue of narcotics."[14] In essence, Rounds avers that consent cannot be voluntary either (a) because police officers did not inform him for what purpose they wished to search his phone or (b) because they asked to search his phone to find evidence of a different crime. Rounds, however, does not point to any case that supports reversal under either theory. And, in fact, the record reveals that the officers told him that they wanted to examine the phone for evidence of sexual exploitation of Jane Doe. The district court did not clearly err in determining that Rounds consented to the search and that the consent was voluntarily given.

Rounds's third argument—that any search of a phone beyond the text

---

[14] Rounds does not dispute any other aspect of the district court's extensive discussion on voluntariness.

No. 12-51081

messages or call records exceeds the scope of a search incident to a lawful arrest—has no bearing on this case.  The district court relied on the *consent exception*, not the search-incident-to-lawful-arrest exception.[15]

The judgment of conviction is AFFIRMED.

---

[15] Rounds may instead be attempting to reason that the search of photographs and videos in his cellphone falls outside the scope of his consent.  He did not make that argument in the district court and has not adequately briefed it on appeal, so it is waived. *See United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992).