# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30366
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
August 29, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee

v.

QUINN P. REED,

     Defendant-Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:16-CR-51-1

Before JOLLY, JONES, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Quinn P. Reed appeals his conviction for drug possession with intent to distribute, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and unlawful use of a telephone, 21 U.S.C. § 843(b), on grounds that the district court should have granted his motion to suppress evidence. For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30366

At approximately 12:05 a.m. on April 27, 2015, Baton Rouge police arrested and detained Reed after illegally searching his vehicle and uncovering narcotics. Reed was suspected of associating with a member of a gang under a separate investigation, which led to the monitoring of Reed's telephone calls from jail. On April 28, 2015, at 9:52 p.m., Reed called his girlfriend, Albertha Guerin, and instructed her to retrieve containers with false bottoms from his mother's house and "put up" "that white stuff" stored inside.[1] According to authorities, Reed's reference to "white stuff" in canisters with false compartments indicated narcotics, and he was "facilitating a crime by asking his girlfriend" to move and store the narcotics for him. Based on this information, authorities obtained a warrant the next day to search Reed's residence. No drugs were found at Reed's residence, but Reed's narcotics were located at Guerin's residence. Guerin's mother had provided the authorities with consent to search the residence at 10:52 p.m. on April 29, 2015.

The district court suppressed the narcotics seized from Reed's vehicle during the initial arrest. Reed filed a second motion to suppress his telephone call to Guerin, as well as the narcotics found at Guerin's home, arguing that they were derived from the unconstitutional search of his vehicle and thus fruit of the poisonous tree in violation of the Fourth Amendment. The district court denied the motion, holding that the call and narcotics found in Guerin's home were sufficiently attenuated from the unconstitutional search of Reed's vehicle and thus not subject to the exclusionary rule.

In considering the denial of a motion to suppress, "this court reviews the district court's fact findings for clear error and its legal conclusions *de novo*." *United States v. Rounds*, 749 F.3d 326, 337 (5th Cir. 2014). All evidence is

---

[1] The district court erroneously found that Reed's jailhouse call to Guerin occurred on April 27, 2015 at 10:00 a.m. The transcript of the call shows that it actually occurred on April 28, 2015, at 9:52 p.m. Thus, the district court clearly erred in this factual finding.

viewed in the light most favorable to the prevailing party, here the Government. *Id*. at 338.

The statements Reed communicated via jailhouse telephone to Guerin are not subject to the exclusionary rule because the statements themselves constitute a crime. *See United States v. Garcia-Jordan*, 860 F.2d 159, 160-61 (5th Cir. 1988); *United States v. Melancon*, 662 F.3d 708, 712 (5th Cir. 2011). Furthermore, the statements are similarly not subject to the Fifth Amendment's voluntariness requirement because they are criminal acts, as well as not confessional in nature; the statements were made to Reed's girlfriend as opposed to the police. *United States v. Kirk*, 528 F.2d 1057, 1062 (5th Cir. 1976).

It is unclear whether the drugs seized from Guerin's home as a result of Reed's illegal telephone instructions are subject to the exclusionary rule. *Compare United States v. Butts*, 729 F.2d 1514, 1518 (5th Cir. 1984) (authorities may seize evidence from an intervening criminal act under certain circumstances) *with United States v. Nooks*, 446 F.2d 1283, 1288 (5th Cir. 1971) (attenuation doctrine applied to evidence incident to a defendant's crime committed while in custody after a potentially illegal stop). However, assuming the exclusionary rule could apply, the district court correctly denied Reed's motion to suppress because the narcotics are sufficiently attenuated from Reed's illegal arrest. *Utah v. Strieff*, 136 S. Ct. 2056, 2061-62 (2016).

In applying the attenuation doctrine, courts consider three factors: the temporal proximity "between the unconstitutional conduct and the discovery of evidence," intervening circumstances, and the purpose and flagrancy of the official misconduct. *Id.* First, the approximately 45 hours between the time of Reed's illegal arrest and the subject call and the additional 25 hours before the police found the drugs at Guerin's home constitute a "substantial period of

No. 18-30366

time" favoring attenuation. *See United States v. Cherry*, 794 F.2d 201, 206 (5th Cir. 1986)

Second, at least three intervening circumstances occurred weighing in favor of attenuation: Reed's illegal telephone instructions from jail, *see United States v. Sheppard*, 901 F.2d 1230, 1235 (5th Cir. 1990) (defendant's flight from police after an illegal stop "constituted criminal activity and functioned to break any nexus between the challenged" stop and the evidence seized); the consent that Guerin's mother provided to the authorities to search her residence, which led to the discovery of Reed's narcotics, *see United States v. Cooke*, 674 F.3d 491, 495 (5th Cir. 2012); and the information gleaned from Reed's illegal telephone instructions regarding the location of the drugs that constituted probable cause, *see Cherry*, 794 F.2d at 206.

Third, Reed concedes that there "is no direct evidence that [he] was initially stopped, detained, arrested, and incarcerated in order for law enforcement to listen to his telephone calls." Furthermore, the record lacks evidence that the Baton Rouge Police Department exhibited a pattern of conducting illegal stops and arrests in order to listen to jailhouse calls. Thus, the purpose and flagrancy of the official misconduct favors attenuation. *Strieff*, 136 S. Ct. at 2063.

Taken together, the attenuation factors sever the nexus between Reed's illegal arrest and the drugs seized at Guerin's home. Thus, the district court's denial of Reed's motion to suppress the drugs, as well as the telephone call itself, is **AFFIRMED**.