# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————

No. 19-60297
Summary Calendar

————————

United States Court of Appeals
Fifth Circuit

**FILED**
January 29, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

DANIEL GUSTAVO PENA-MORALES,
also known as Daniel Pena Morales Gustavo,

Defendant–Appellant.

\* \* \* \* \* \* \*

————————

No. 19-60307
Summary Calendar

————————

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

JOSEPH NICOLE VERGARA-MORAN,
also known as Joseph Nicole Vergara Moran,

Defendant-Appellant.

No. 19-60297
c/w No. 19-60307

———————————

Appeals from the United States District Court
for the Northern District of Mississippi
No. 1:18-CR-70-6
No. 1:18-CR-70-5

———————————

Before DAVIS, SMITH, and HIGGINSON, Circuit Judges.

PER CURIAM:*

With plea agreements, Daniel Pena-Morales and Joseph Vergara-Moran entered conditional guilty pleas to conspiracy to commit an offense against the United States which affected interstate commerce. They reserved the right to appeal the denial of suppression of evidence seized after a stop of their vehicle and another vehicle driven by their coconspirators at a safety checkpoint.

"When reviewing a denial of a motion to suppress evidence, this Court reviews factual findings for clear error and the ultimate constitutionality of law enforcement action de novo." *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014). In addition to deferring to the district court's factual findings, we must view the evidence in the light most favorable to the prevailing party. *United States v. Pack*, 612 F.3d 341, 347 (5th Cir.), *modified on other grounds on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). A district court's denial of a suppression motion should be upheld "if there is any reasonable view of the evidence to support it." *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (internal quotation marks and citation omitted).

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-60297
c/w No. 19-60307

Viewing the evidence in the light most favorable to the government, we conclude that the district court did not err. *See Pack*, 612 F.3d at 347. The safety checkpoint was lawful; the Supreme Court has upheld similar checkpoints where the intrusion into the privacy interest at stake is minimal. *See, e.g., Illinois v. Lidster*, 540 U.S. 419, 427–28 (2004); *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000); *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 451 (1990). Regarding the stop of the Toyota, driven by the codefendants of Pena-Morales and Vergara-Moran, officers noted that it was traveling at about 11:50 p.m.; the front passenger seat was vacant, and the backseat was occupied by two persons; the driver had a temporary Florida driver's license; the vehicle was registered in Florida; and the woman in the back seat had a Venezuelan passport with no entry stamp into the United States. Trooper Gregory Bell testified that he was concerned that the woman was the victim of human trafficking or was being held against her will. The combination of these factors provided reasonable suspicion sufficient to extend the initial stop.

About thirty seconds later, a Volkswagen Jetta driven by Pena-Morales stopped at the checkpoint; it had a Florida registration, and Pena-Morales had a Venezuelan passport. When officers discovered the similarities between the vehicles, they had reasonable suspicion to ask follow-up questions concerning whether there was a connection between the two vehicles and their itineraries. The drivers gave contradictory answers concerning whether they were traveling together. At that time, less than five minutes had elapsed from the time of the stop. Given that the cars were driving in tandem, the drivers gave contradictory answers, and the vehicles were coming from the "source" city of Miami, Florida, the officers had reasonable suspicion that the vehicles might be involved in drug trafficking. *See United States v. Glenn*, 931 F.3d 424, 429

No. 19-60297
c/w No. 19-60307

(5th Cir. 2019), *cert. denied*, 2019 WL 6257499 (U.S. Nov. 25, 2019); *United States v. Brigham*, 382 F.3d 500, 508, 511 (5th Cir. 2004) (en banc).

Based on this reasonable suspicion, the officers could then request consent to search the vehicles and conduct a sweep of the vehicles by a drug dog that was already present at the scene. *See Glenn*, 931 F.3d at 429. The use of the drug dog to conduct a sweep was "a means of investigation that was likely to confirm or dispel [the officers'] suspicions quickly." *Brigham*, 382 F.3d at 511. The dog alerted on the Toyota and had a notable change of behavior as to the Volkswagen, giving the officers probable cause to believe that the vehicles were involved in drug trafficking and probable cause to search the vehicles. *See United States v. Rodriguez*, 702 F.3d 206, 210 (5th Cir. 2012).

Further, Pena-Morales has not shown that the district court clearly erred in finding that his consent to search the Volkswagen was voluntary. *See United States v. Rounds*, 749 F.3d 326, 338 (5th Cir. 2014). Although Pena-Morales was not free to leave because he was removed from the vehicle at the time he consented to the search, and it was unclear whether he believed no evidence would be found, other factors weighed in favor of finding that his consent was voluntary as there was no evidence of coercion: He was cooperative; there was no evidence concerning his education or intelligence; and he signed a consent form written in Spanish, his native language, which stated that he had the right to refuse consent to the search. *See id.* For these reasons, the district court did not err in denying the motion to suppress. *See Robinson*, 741 F.3d at 594.

AFFIRMED.

4