# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 23, 2026

Lyle W. Cayce
Clerk

No. 25-30241

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DERRICK LONG,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:23-CR-173-5

_____

Before STEWART, ENGELHARDT, and DOUGLAS, *Circuit Judges*.

PER CURIAM:[*]

 In November 2024, a jury convicted Derrick Long of conspiracy to distribute and possess with the intent to distribute methamphetamine and distribution of methamphetamine. Thereafter, the Government disclosed that its confidential informant, Jerome White, provided false testimony about controlled drug purchases in a separate federal case. Long filed a motion for a new trial under Federal Rule of Criminal Procedure 33, arguing that this

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

information was newly discovered evidence that would have resulted in his acquittal if it had been disclosed to the jury. The district court denied the motion and sentenced Long to two concurrent terms of 235 months of imprisonment and five years of supervised release.

On appeal, Long challenges the district court's denial of his motion for a new trial, contending that the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose material impeachment evidence. Because evidence that White provided false testimony in a separate federal case is not material in the context of the entire record, Long has failed to establish a *Brady* violation. Therefore, the district court did not plainly err, and we AFFIRM its judgment.

**I**

In early 2023, Corporal Detective Anthony Cowan of the Monroe Police Department and Special Agent Andrew Laiche of the Drug Enforcement Administration ("DEA") were investigating drug trafficking in Northeast Louisiana as members of the Metro Narcotics DEA Task Force. They worked with White, a confidential informant, to arrange controlled purchases of methamphetamine from Long's friend James Ard who was allegedly selling methamphetamine from his house in Monroe, Louisiana. Detective Cowan and Agent Laiche instructed White to make controlled purchases from Ard on January 19, January 27, February 27, and June 20. Detective Cowan and Agent Laiche as well as other members of the Metro Narcotics DEA Task Force were typically present with White when he arranged these purchases with Ard. They also searched White before he entered Ard's house, provided him with money, outfitted him with surveillance equipment, and received methamphetamine from him when he returned from Ard's house.

No. 25-30241

In August 2024, a grand jury in the Western District of Louisiana charged Long and his codefendants with conspiracy to distribute and to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846 (Count 1), and distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) and 18 U.S.C. § 2 (Count 2) in a Second Superseding Indictment. Count 1 charged Long and his codefendants, including Ard and Brandon Wright, with conspiracy to possess with the intent to distribute fifty grams or more of methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine from January 2023 to July 7, 2023. Count 2 charged Long and Ard with distribution of five grams or more of methamphetamine on February 27, 2023. All of Long's codefendants pleaded guilty to the Count 1 conspiracy charge. Ard and Wright agreed to testify against Long at trial.

The trial against Long began on November 12, 2024. To prove its case, the Government presented the testimony of five witnesses: White, Ard, Detective Cowan, Agent Laiche, and Wright. It also played wiretap audio recordings of phone calls between Ard and several individuals, including Long, Wright, Trentin Parks,[1] and a potential buyer named "Migo," discussing drug sales. Long did not present a defense.

White testified that he helped arrange four methamphetamine purchases from Ard, including one on February 27, 2023. White testified that on that day, he called Ard, and Ard told him to call Long. White called Long but was unable to reach him. White then called Ard back, and Ard told him to go to Ard's house. After he was searched by task force officers, White went

_____

[1] Trentin Parks was charged with conspiracy to distribute and possess methamphetamine in Count 1 of the original Superseding Indictment, which was filed in December 2023.

to Ard's house where Ard's teenage son and Long were present. White then purchased methamphetamine from Long. White returned to the vehicle where task force officers were waiting for him. During the purchase, White was wearing a recording device that captured a short video of Long's face, and this video was played for the jury. White then identified Long in the video and in court. He explained that "[Long] was just getting everything ready for [him]" in the video.

The jury also heard evidence impeaching White's credibility. First, White testified about his extensive criminal history. The jury heard that he was convicted of several crimes between 2011 and 2024: conspiracy to commit simple burglary, illegal possession of stolen things, simple burglary of an inhabited dwelling, conspiracy to commit armed robbery, battery on a dating partner, misdemeanor theft, domestic abuse battery, and possession of cocaine.[2] Second, White testified that he was a paid informant.[3] And third,

---

[2] The district court gave the following pattern jury instruction:

You have been told that the witnesses James Ard, Jerome White and Brandon Wright were convicted of felony offenses. A conviction is a factor you may consider in deciding whether to believe that witness, but it does not necessarily destroy the witness'[s] credibility. It has been brought to your attention only because you may wish to consider it when you decide whether you believe the witness'[s] testimony. It is not evidence of anything else.

See Fifth Circuit Pattern Jury Instructions (Criminal) § 1.13 (2024).

[3] The district court gave the following pattern jury instruction:

[T]he testimony of one who provides evidence against a defendant, as an informer for pay, . . . must always be examined and weighed by the jury with great[er] care and caution than the testimony of ordinary witnesses. . . . You should keep in mind that such testimony is always to be received with caution and weighed with great care.

See Fifth Circuit Pattern Jury Instructions (Criminal) § 1.15 (2024).

White testified that he was arrested for stealing $200 and methamphetamine during a controlled purchase on June 20, 2023. Detective Cowan explained that, on June 20, White was given $2,000 to purchase eight ounces of methamphetamine from Ard, and that White only returned with seven ounces. After searching White, the agents found the missing ounce of methamphetamine inside of his underwear. Detective Cowan shared that White was then arrested and terminated from his confidential informant contract.

After a two-day trial on November 13, 2024, the jury found Long guilty on both counts.

\*       \*       \*

On December 3, 2024, the Government disclosed that White provided false testimony in a separate federal case. *See United States v. Manning*, No. 23-00070-01, 2024 WL 2789476 (W.D. La. May 13, 2024). There, White testified that he had conducted four controlled drug purchases with the defendant, Kylan Manning. However, White falsely alleged that he had conducted two of those controlled drug purchases with Manning on dates when Manning was out of the country on a cruise (the "*Manning* evidence"). Long filed a motion for a new trial under Federal Rule of Criminal Procedure 33, arguing that he was entitled to a new trial based on

No. 25-30241

the *Berry* rule for newly discovered evidence.[4] *See United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011). The district court denied the motion, concluding that the *Manning* evidence is merely impeachment evidence and that it probably would not have resulted in Long's acquittal if it had been introduced at trial. It reasoned that Long's distribution conviction was supported by "[a] video and a screenshot of the video show[ing] Long distributing the methamphetamine to White," White's and Agent Laiche's identification of Long in the video and in the courtroom, and the testimony of Detective Cowan, Agent Laiche, and Ard. It further explained that Long's conspiracy conviction was supported by the testimony of Ard, Agent Laiche, Detective Cowan, and Wright as well as "[p]ole camera evidence and photographs show[ing] Long spending long periods of time at Ard's house." Finally, the district court noted that "White's credibility was very effectively challenged at trial." Therefore, it held that Long was not entitled to a new trial.

In June 2025, the district court sentenced Long to two concurrent terms of 235 months of imprisonment and five years of supervised release. Long timely appealed.

---

[4] To receive a new trial under the *Berry* rule, a defendant must show:

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to the defendant's lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.

*United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011) (first citing *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004); and then citing *Berry v. State*, 10 Ga. 511 (1851)).

No. 25-30241

## II

The district court had jurisdiction over this criminal case under 18 U.S.C. § 3231. Because this is an appeal from a final judgment, this court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Because Long raises a *Brady* claim for the first time on appeal, this court reviews for plain error. *See United States v. Rojas*, 812 F.3d 382, 408 (5th Cir. 2016); *United States v. Rounds*, 749 F.3d 326, 337 (5th Cir. 2014). "On plain-error review, we will reverse only if '(1) there is an error, (2) that is clear or obvious, and (3) that affects [the defendant's] substantial rights.'" *Rojas*, 812 F.3d at 391 (alteration in original) (quoting *United States v. Ferguson*, 211 F.3d 878, 886 (5th Cir. 2000)). Then, (4) "[e]ven if these conditions are met, the decision whether to correct a forfeited error remains soundly within our discretion." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 735–36 (1993)). We will exercise our discretion to remedy a forfeited error only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (citation modified).

"The plain-error standard requires first that there be error, a question we consider *de novo*." *Rounds*, 749 F.3d at 337 (citing *United States v. Garza-Lopez*, 410 F.3d 268, 272–73 (5th Cir. 2005)). Thus, we begin by determining whether there was a *Brady* violation. To establish a *Brady* violation, a defendant must prove: "(1) the prosecutor *suppressed* evidence, (2) *favorable* to the defense, (3) and *material* to guilt or punishment." *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005) (citing *Brady*, 373 U.S. at 87). "To have been suppressed, the evidence must not have been discoverable through the defendant's due diligence." *United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011) (citing *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002)). Impeachment evidence is *favorable* to the defense because it could "make the difference between conviction and acquittal." *United States v.*

*Bagley*, 473 U.S. 667, 676 (1985) (citations omitted). "The materiality of *Brady* evidence is *not* considered in the light of the probability of acquittal." *Floyd v. Vannoy*, 894 F.3d 143, 165–66 (5th Cir. 2018) (citing *Bagley*, 473 U.S. at 680). Rather, "[e]vidence is *material* if there is 'a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Miller*, 431 F.3d at 245 (quoting *Bagley*, 473 U.S. at 682). "Th[e] reasonable-probability standard is met if the suppression is significant enough to undermine confidence in the outcome of the trial." *Id.* (citing *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995)). To determine whether the reasonable-probability standard has been met, courts consider "the withheld evidence in the context of the entire record." *Turner v. United States*, 582 U.S. 313, 324–25 (2017) (internal quotation marks and citation omitted).

### III

On appeal, Long argues that the Government violated *Brady* by failing to disclose the *Manning* evidence. The Government did not brief arguments as to whether the *Manning* evidence was suppressed and whether it is favorable to the defense. Therefore, these arguments are forfeited, and the only issue on appeal is whether the *Manning* evidence is material.[5] *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing . . . to adequately brief the argument on appeal.").

This court has found that "when the undisclosed evidence is merely cumulative of other evidence [in the record], no *Brady* violation occurs." *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004) (alteration in original) (internal quotation marks and footnote omitted). Generally, "[s]uppressed

---

[5] During oral argument, counsel for the Government acknowledged that it was only contesting materiality, and that the *Manning* evidence should have been disclosed.

evidence is not material when it merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." *Id.* at 489 (internal quotation marks and footnote omitted). Moreover, "when the testimony of the witness who might have been impeached by the undisclosed evidence is strongly corroborated by additional evidence supporting a guilty verdict, the undisclosed evidence generally is not found to be material." *Id.* at 478 (citing *Wilson v. Whitley*, 28 F.3d 433, 439 (5th Cir. 1994)). Therefore, we analyze whether the *Manning* evidence is merely cumulative of other evidence in the record and whether White's testimony was strongly corroborated by additional evidence supporting the verdict.

### A. Is the undisclosed evidence merely cumulative?

We first consider whether the *Manning* evidence is merely cumulative of other evidence in the record. As discussed *supra*, White's credibility was impeached on several grounds. He testified about his extensive criminal history and about being a paid informant. He further revealed that he was arrested for stealing money and methamphetamine during a controlled purchase in the investigation of this case. Detective Cowan also explained that White was arrested and terminated from his confidential informant contract for his theft.

While this impeachment evidence provided the jury with several reasons to discredit White's testimony, the *Manning* evidence is not merely cumulative because it implicates a distinct form of impeachment: character

9

for untruthfulness.[6] The impeachment evidence presented at trial revealed White's potential bias toward the Government and history of committing crimes that did not necessarily involve dishonesty. Even if evidence that White stole methamphetamine and money as a confidential informant speaks to his truthfulness, his previous false testimony was so closely factually related to what could have occurred in this case that it is different in character from the impeachment evidence presented at trial. And unlike the cooperating witnesses in *Perry* who were "extensively impeached as liars in front of the jury," White was not impeached as a liar. *United States v. Perry*, 35 F.4th 293, 347 (5th Cir. 2022). Long persuasively argues that "[t]he suppressed impeachment evidence would have allowed Long to show White to be a liar with a track record of falsely implicating the alleged seller in drug deals that White conducted as a government informant." Therefore, the *Manning* evidence is not merely cumulative of other evidence in the record because it would have enabled Long to expose White's character for untruthfulness and propensity for falsely implicating criminal defendants in addition to his potential bias and criminal history.

### B. *Was White's testimony strongly corroborated?*

We next turn to whether White's testimony was strongly corroborated by other evidence supporting the verdict. *See Sipe*, 388 F.3d at 478 (citing *Wilson*, 28 F.3d at 439). "[T]he materiality inquiry is not just a

---

[6] While there is no explicit provision for impeachment by evidence of bias under the Federal Rules of Evidence, "it is permissible to impeach a witness by showing his bias under the Federal Rules of Evidence . . . ." *United States v. Abel*, 469 U.S. 45, 51 (1984). However, there are specific provisions for impeachment by evidence of a character for untruthfulness and impeachment by evidence of prior criminal convictions. *See* Fed. R. Evid. 608 (character for untruthfulness); Fed. R. Evid. 609 (criminal convictions). Impeachment by showing bias, by showing a character for untruthfulness, and by showing prior criminal convictions are distinct forms of impeachment.

matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions." *Strickler v. Greene*, 527 U.S. 263, 290 (1999) (citing *Kyles*, 514 U.S. at 434–35). "Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* (citing *Kyles*, 514 U.S. at 435).

White's testimony was strongly corroborated by other evidence supporting the verdict.[7] Testimony from Ard, Detective Cowan, Agent Laiche, and Wright as well as wiretap audio recordings support Long's convictions.

As discussed *supra*, White testified that he called Ard on February 27, 2023, that Ard told him to call Long, and ultimately told him to go to Ard's house where he purchased methamphetamine from Long. The jury viewed the video that was recorded when White entered Ard's house that day. While the video does not show Long distributing methamphetamine, it does show Long's face, which establishes that he was at Ard's house on February 27. And as the Government observes, the parties do not dispute Long's presence at Ard's house that day.

The testimony of Ard, Detective Cowan, and Agent Laiche also strongly corroborates White's testimony. Ard testified that White called him to buy methamphetamine, and that he told White to go to his house where Long "always" was. Moreover, Detective Cowan testified that White was given money to purchase methamphetamine, and that White returned with

---

[7] The district court similarly concluded that "even if White were impeached by the newly discovered evidence, there was substantial evidence of Long's guilt in the distribution, including a video and screenshot." It also determined that "[t]here was even more substantial evidence to sustain Long's conviction for the conspiracy charge."

methamphetamine. Agent Laiche also testified that White returned with methamphetamine. While Detective Cowan admitted that he and Agent Laiche were not with White when he initially called Ard to arrange the purchase, Detective Cowan was with White when he called Ard back, when White was told to go to Ard's house, and when White returned with methamphetamine.

Finally, wiretap audio recordings and the testimony of Ard and Wright strongly support Long's convictions. The jury heard audio recordings of calls between Ard, Long, and Migo in June 2023 concerning a potential drug sale. The Government persuasively argues that "[t]his evidence demonstrated Long's role in the conspiracy and corroborated White's implication of Long in the February 27, 2023 transaction." *See United States v. Weintraub*, 871 F.2d 1257, 1262 (5th Cir. 1989). While these calls occurred after the controlled purchase on February 27, 2023, which was the basis for the distribution count, they are relevant because they demonstrate a pattern of operation. Ard testified that Long told him that Migo had come to Ard's house, and that he told Long to give Migo marijuana in exchange for $100. Ard explained that Migo had asked him for methamphetamine and cocaine, and that he did not have any at the time but would be able to provide those drugs later. Additionally, the jury heard audio recordings of calls between Wright, Ard, and Parks in June 2023 where Ard arranged a transaction in which Wright agreed to buy 7,000 ecstasy pills from Parks. Wright testified that Long was present when he bought the pills from Parks at Ard's house in June 2023. Wright also explained that Long was at Ard's house when he returned to pick up the pills, corroborating Long's role in the conspiracy.

Long's arguments to the contrary are unpersuasive. While he argues that White's testimony was "[t]he only direct evidence" that he sold drugs to White on February 27, the jury was permitted to consider circumstantial

evidence in evaluating Long's guilt.[8] *See United States v. Garcia-Martines*, 624 F. App'x 874, 879 (5th Cir. 2015) (explaining that it is "established law in this circuit that properly evaluated circumstantial evidence 'is as reliable and trustworthy as a means of proving guilt as direct evidence'" (quoting *Thurmond v. United States*, 377 F.2d 448, 450 (5th Cir. 1967))). And while Long presses that suppressed impeachment evidence can be material if it "would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration," there is strong corroboration in this case, and it appears unlikely that the *Manning* evidence would "seriously undermine" White's testimony given the breadth and depth of the other supporting evidence. *See Sipe*, 388 F.3d at 478. In the *Manning* case, White falsely alleged that he had conducted two controlled drug purchases with the defendant on dates when the defendant was out of the country on a cruise. Here, however, the parties do not dispute that Long was at Ard's house on February 27 with Ard's teenage son. And as the Government argues, White was "unlikely to have confused Long—then a 42-year-old man—with a teenage boy." *See Wilson*, 28 F.3d at 442 (concluding that undisclosed impeachment evidence was not material where the defendant "did not present a strong case for mistaken identity"). Even if the *Manning* evidence would "seriously undermine" White's testimony, other evidence in the

---

[8] The district court gave the following pattern jury instruction:

> The law makes no distinction between the weight[s] [to be given to] either direct or circumstantial evidence. But the law requires that you, after weighing all [of] the evidence, whether direct or circumstantial, be convinced of the guilt of the defendant beyond a reasonable doubt before you can find him guilty.

*See* Fifth Circuit Pattern Jury Instructions (Criminal) § 1.08 (2024).

record considered as a whole strongly corroborates it. Therefore, Long's arguments fail.

In sum, while the *Manning* evidence is not merely cumulative of other evidence in the record, other evidence supporting the verdict *strongly* corroborates White's testimony. Given this strong corroboration and the district court's instruction that testimony from paid informants is always to be received with caution and weighed with great care, the *Manning* evidence does not "put the whole case in such a different light as to undermine confidence in the verdict." *Strickler*, 527 U.S. at 290 (citing *Kyles*, 514 U.S. at 435); *see also Perry*, 35 F.4th at 347 (holding the same given the trial court's "instruction that testimony from witnesses who had entered into plea agreements with the [g]overnment 'is always to be received with caution and weighed with great care'"). Consequently, there is not a *reasonable probability* that the outcome of the trial would have been different had the *Manning* evidence been disclosed. *See Miller*, 431 F.3d at 245 (quoting *Bagley*, 473 U.S. at 682). Therefore, the *Manning* evidence is not material, and Long has failed to establish a *Brady* violation. Because there is no *Brady* violation, the district court did not plainly err in denying Long's motion for a new trial. *See Rojas*, 812 F.3d at 391 (quoting *Ferguson*, 211 F.3d at 886).

## IV

For the foregoing reasons, we AFFIRM the district court's judgment.