# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-10633
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSSUE EMMANUEL FLORES,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CR-257-1

Before KING, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:[*]

Jossue Emmanuel Flores pleaded guilty to possession with intent to distribute a controlled substance and possession of a firearm in furtherance of a drug-trafficking crime. He reserved the right to challenge the denial of a motion to suppress evidence, a challenge he now raises on appeal.

\* \* \*

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-10633

At the motion to suppress hearing before the district court, Johnny Sosa, a former police officer, recounted the events surrounding his search of Flores's property. He recalled that he and group of officers went to Flores's residence at about 10:00 a.m. on April 4, 2017, and Sosa approached the front door with another officer to conduct a "knock and talk." After Sosa knocked and identified himself as a police officer, he heard movement inside and saw people peering through blinds, but no one came to the door. He and his partner continued to knock and identify themselves but still received no response. This went on for several minutes until Flores, who had been contacted by someone inside the house, came hurrying up the sidewalk.

Flores claimed that his wife and daughter lived at the home, but that he did not. When asked if he would consent to a search of the residence, he said the officers would have to speak to his wife. However, Sosa soon established that Flores did live at that address and again requested consent for a search. Flores avoided giving a direct response and was then asked if he would consent to the use of a drug-detection dog to sniff outside the house. He answered that, while he would not allow the officers to bring a dog into the backyard, "if [they] wanted to run the dog around the front of the residence, he was fine with that." A deputy retrieved the drug-detecting dog from a patrol car and led it up to the house, where it alerted to the presence of narcotics near the front door. The officers obtained a warrant to search the residence and discovered cocaine, firearms, and ammunition.

After hearing this testimony and argument regarding Flores's motion to suppress, the district court denied the motion, finding that Flores had consented to the dog sniff and the officers had not acted improperly.

Flores raises two arguments on appeal: (1) that officers violated the Fourth Amendment by coming to the door of his residence; and (2) that he did

2

not give voluntary consent for a trained dog to sniff around his front yard. We review the district court's factual findings for clear error and the ultimate constitutionality of law enforcement actions de novo. *See United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014).

Relying on *Florida v. Jardines*, 569 U.S. 1 (2013), Flores argues that police acted unlawfully by coming to the front door of his residence to conduct a "knock and talk" with a trained narcotics dog. In *Jardines*, the Supreme Court held that officers violated the Fourth Amendment by bringing a trained police dog onto a person's property, allowing it to sniff around, and then seeking a warrant after the dog alerted, making no attempt to communicate with anyone in the home. 569 U.S. at 9. But the Court distinguished this situation from an officer approaching a home, unassisted by a trained dog, and knocking to communicate with those inside. *Id.* at 8. In the latter fact pattern, the officer is doing "no more than any private citizen might do," and is therefore acting within constitutional bounds. *Id.* (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011).

In this case, Flores suggests that the officers' behavior was unconstitutional because they had a trained dog with them, but this argument is misleading. Unlike in *Jardines*, the dog stayed in the police vehicle and was not allowed onto the property, let alone to search the property, until Flores gave consent for it to sniff around the front yard. Therefore, *Jardines* does not support Flores's argument.

Flores further argues that the officers violated the Fourth Amendment when they conducted their "knock and talk" because they arrived at 10:00 a.m. on a weekday, when people do not expect to have visitors. But this argument is also unsupported by the law. *Jardines* acknowledged that "a police officer not armed with a warrant may approach a home and knock," and it made no distinction between days of the week. *Id.* at 8. During daylight hours on a weekday is a natural time for any

No. 19-10633

citizen—from your next door neighbor to an internet-services salesperson—to approach a home and knock on the door. *But cf. Westfall v. Luna*, 903 F.3d 534, 545 (5th Cir. 2018) (questioning reasonableness of "knock and talk" that, among other things, took place at 2:00 a.m.). Therefore, this argument is without merit.

In his second point, Flores argues that he did not provide valid consent for the dog sniff. He suggests that his consent could not be valid because it followed the officers' unconstitutional intrusion on his property. But as we just noted, that argument is without merit. The officers did not behave improperly in conducting their "knock and talk"; therefore, this is not a basis for finding his consent invalid.

To the extent Flores suggests his consent was not otherwise voluntary, Flores would need to show that his consent "was the product of duress or coercion, express or implied." *United States v. Perales*, 886 F.3d 542, 545–46 (5th Cir. 2018). He has not made such a showing. Flores was not in custody when he gave his consent; the officers did not employ coercive tactics to obtain the consent; Flores cooperated with the police during their encounter; he seemingly understood his right to refuse consent, considering he limited the sniff to the front yard; he was able to communicate with the officers intelligently; and Flores seemed to believe that the dog not would alert to anything in its search of the front yard (particularly as the contraband was ultimately found in a locked safe in the master bedroom). *See United States v. Glenn*, 931 F.3d 424, 430 (5th Cir. 2019) (outlining six-factor test for determining whether consent was voluntarily given). Based on these facts, there is no question that Flores's consent was voluntary.

\*    \*    \*

Flores fails to demonstrate that the district court erred in denying his motion to suppress. The judgment is therefore AFFIRMED.