# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 18, 2020

Lyle W. Cayce
Clerk

No. 19-50832

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ANDRES SORIANO,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:18-CR-592-1

Before KING, STEWART, and SOUTHWICK, *Circuit Judges*.

CARL E. STEWART, *Circuit Judge*:

Andres Soriano appeals the district court's denial of his motion to suppress on grounds that he did not voluntarily consent to the search of his vehicle conducted during a traffic stop. For the following reasons, we AFFIRM.

## I. Facts & Procedural History

In August 2018, Soriano was arrested during a traffic stop after a search of his vehicle revealed a suitcase that contained nine bundles of a substance later determined to be cocaine having a total weight of 10,715

No. 19-50832

grams. He was charged with possession with the intent to distribute five kilograms or more of cocaine.  *See* 21 U.S.C. § 841.

Soriano moved to suppress the discovery of the cocaine. He contended that the police officers who conducted the traffic stop, Carla Rodriguez-Montelongo and Javier Ramirez, "unjustifiably prolonged his detention beyond the amount of time needed to complete the purpose of the traffic stop" in violation of his Fourth Amendment rights.  He also argued that his consent to search his vehicle was involuntary under this court's six-part test for determining whether consent was given freely and voluntarily. (citing *United States v. Perales*, 886 F.3d 542, 546 (5th Cir. 2018)).

The magistrate judge (MJ) conducted a hearing on Soriano's motion. Officer Rodriguez testified at the hearing that on the day in question, she was traveling eastbound on Interstate 10 with her partner, Officer Ramirez, performing routine traffic patrol. Soriano was travelling in his vehicle eastbound and passed Officer Rodriguez's patrol car. The speed limit was 80 miles per hour and Officer Rodriguez clocked Soriano driving at 90 miles per hour. She also observed that the vehicle's window tint appeared to exceed the legal limit. She activated her emergency lights to make a traffic stop, which automatically activated the patrol car's dash-cam video and the officers' body cameras.

Officer Rodriguez[1] approached Soriano's vehicle on the passenger side and speaking in Spanish, informed Soriano of the reason for the traffic stop: "speed and the window tint." She ran a "tint meter" on Soriano's windows, which confirmed that his window tint exceeded the legal limit.

---

[1] It appears from the record that Officer Ramirez stood close to Officer Rodriguez and Soriano during most of the traffic stop, but did not directly question or speak with Soriano until after the search of the vehicle ended and Soriano was placed under arrest.

No. 19-50832

Soriano then volunteered that his driver's license had been suspended for approximately two years due to his prior receipt of tickets for speeding and driving without insurance.

Officer Rodriguez asked Soriano where he was going, and he responded that he was traveling from El Paso to Odessa to see his mother and brother and that he planned to return that day, that night, or the next day. According to Officer Rodriguez, it was rare for people to make such a trip on a Sunday. In her experience, people would typically leave on Friday and return the following Sunday or Monday, particularly if they planned to visit family. Soriano's story did not seem credible to her and raised her suspicion that he was not being truthful.

Officer Rodriguez asked for Soriano's registration and he handed it to her. She asked him when was the last time that he had been pulled over, and he responded that it had been a while because he usually drove cautiously. She asked if Soriano had ever been arrested and he asked her to repeat the question, which raised "red flags" with her because she believed that he was stalling to come up with an answer. Soriano stated that he had been arrested a year and a half prior "for tickets."

Officer Rodriguez asked Soriano to roll down the rear window and she observed a large duffle bag or suitcase in the back seat. This made her suspect that Soriano was not being truthful because he had told her that he was returning that night or the next day, but the bag appeared too large for such a short trip. When Officer Rodriguez questioned Soriano about the size of the suitcase, he stated that he was actually going to stay in Odessa for a couple of days. When Rodriguez confronted him with the discrepancy in his story— short versus long stay—he began to backpedal and replied that he was not sure if his mother was home so he may end up returning sooner than he had planned. Officer Rodriguez testified that she found Soriano's explanation

strange because he had not called his mother to confirm that she would be home before driving so far to see her. She then testified that at this point, Soriano seemed very nervous because his face was flushed and he was beginning to sweat. She suspected that he was hiding something.

Officer Rodriguez asked Soriano to exit the vehicle. She asked if he had anything illegal in the vehicle and he immediately looked at the car. She testified that based on her training and experience, she took Soriano's reaction as a sign that the car likely contained contraband. She asked Soriano about the contents of the suitcase and he responded that it contained clothes and showed her the top layer of clothes. She asked Soriano what was in his trunk, and he opened it. The trunk contained multiple gallon containers of gasoline and he explained that gasoline was "cheaper in El Paso."

Officer Rodriguez told Soriano that he would receive a citation for driving without a license and that they would proceed after a records check. She returned to her patrol car to run "criminal history" and "border" checks. She learned that Soriano had been arrested two months prior for theft, unlawful possession of a dangerous weapon, and possession of a controlled substance. Her suspicions escalated due to the disparity between this information and Soriano's earlier statement that he had been arrested a year and a half prior "for tickets." She returned to Soriano's vehicle and questioned him about the discrepancy and he admitted to having been arrested for theft but did not mention the weapon and controlled substance charges.

Officer Rodriguez then asked if Soriano had anything illegal in the vehicle such as cocaine, marijuana, ecstasy, or large amounts of money. He replied "Nothing, nothing" but she observed that he appeared to grow more nervous. She then asked, "Do you give me permission to check the car?" and Soriano responded, "Check it." She continued, "If I call the dog right now

from the checkpoint, do you think it will alert?" Soriano replied, "No, you can bring him." She then informed him that he would receive a citation for not having a license and for speeding and a warning for the tint. Both officers put on their gloves in anticipation of searching Soriano's vehicle. She asked him to empty his pockets, which revealed $2,000 in his wallet. He explained that the money was from his work as a cook and manager.

Officer Rodriguez testified that she searched Soriano's vehicle based on his voluntary consent and that she was detaining him based on her reasonable suspicion. She did not place him under arrest or put him in her patrol car. She then discovered nine "kilo sized bundles" of cocaine in the suitcase and placed Soriano under arrest.

After considering the testimony and arguments from counsel, the MJ recommended that the district court deny Soriano's suppression motion. The MJ found that Officer Rodriguez had reasonable suspicion to extend the traffic stop and that the totality of the evidence weighed in favor of a finding that Soriano voluntarily consented to the search. The district court adopted the MJ's report and denied Soriano's motion to suppress.

Pursuant to a conditional plea agreement, Soriano pled guilty to the charged offense but reserved the right to appeal the district court's denial of his motion to suppress. The district court sentenced him within the guidelines range to 70 months of imprisonment and three years of supervised release. Soriano filed this appeal.

## II. Discussion

The sole issue on appeal is whether the district court erred in concluding that Soriano voluntarily consented to the search of his vehicle. We hold that it did not.

When examining the district court's denial of a motion to suppress evidence, this court reviews questions of law de novo and factual findings for clear error. *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005). Voluntariness of consent is a factual inquiry. *United States v. Rounds*, 749 F.3d 326, 338 (5th Cir. 2014). Factual findings are "clearly erroneous if the court is left with the definite and firm conviction that a mistake has been committed." *United States v. Hernandez*, 279 F.3d 302, 306 (5th Cir. 2002) (internal quotation marks and citation omitted). If a factual finding is "plausible in light of the record as a whole," it is not clearly erroneous. *United States v. Zavala*, 541 F.3d 562, 574 (5th Cir. 2008) (internal quotation marks and citation omitted). Where, as here, the denial of a suppression motion is based on live testimony at a hearing, "the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *Santiago*, 410 F.3d at 197. In addition to deferring to the district court's factual findings, this court must "review the evidence in the light most favorable to the prevailing party," here, the Government. *Id.*

A warrantless search is presumptively unreasonable, subject to certain exceptions, such as voluntary consent. *Id.* at 198. "The voluntariness of consent is a question of fact to be determined from a totality of the circumstances." *Id.* at 199 (internal quotation marks and citation omitted). To evaluate the voluntariness of consent, we consider the following six factors: "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." *Id.*

Here, the district court determined that three factors weighed against a finding of voluntariness: Soriano was involuntarily detained; Officer

Rodriguez did not inform him of his right to refuse consent; and Soriano likely believed that incriminating evidence would be found. It also found that three factors favored a finding of voluntariness: the lack of coercive police procedures; the extent of Soriano's cooperation; and Soriano's education and intelligence. Although the factors were essentially even on both sides, the district court concluded that, based on the totality of the circumstances, Soriano's consent was voluntary. We agree and will discuss each factor in turn.

### A. Voluntariness of Custodial Status

Voluntariness of custodial status turns on whether a reasonable person in the defendant's position would feel free to terminate the encounter. *See United States v. Cavitt*, 550 F.3d 430, 439 (5th Cir. 2008). Whether an investigating officer has returned a defendant's license and documents and has provided the citation as promised are relevant to whether a reasonable person would feel free to terminate the encounter. *See id.*

After Soriano provided Officer Rodriguez with his vehicle's registration approximately four minutes into the encounter, she continued to retain possession of the registration throughout the period that she questioned Soriano and at the time that he consented to the search. She also informed Soriano that she intended to issue him a citation for driving without a license, yet she had not issued that citation as of the time that he consented to the search.

A reasonable person in Soriano's position "might not have felt free to leave until he was issued the promised [citation] and his [registration] had been returned." *Id.* Accordingly, it was not clearly erroneous for the district court to weigh this factor against a finding of voluntariness.

### B. *Presence of Coercive Police Procedures*

Soriano contends that Officer Rodriguez employed coercive police procedures when she suggested that Soriano was not being truthful, repeatedly asked whether he had any illegal substances, and deceived him by telling him that Officer Ramirez agreed that her questions were clear. The district court concluded that no coercive police procedures were utilized in obtaining Soriano's consent to search his vehicle. Although Officer Rodriguez pointed out the inconsistencies in Soriano's statements, the district court found that her statements and questions were not intended to trick him into consenting. The district court also noted that Soriano failed to point to case law indicating that confronting a defendant with inconsistent statements is a coercive police procedure. We agree. Officer Rodriguez's statements—made during a valid traffic stop that was prolonged due to reasonable suspicion—were a means of investigating in order to confirm or dispel her suspicions. *See United States v. Brigham*, 382 F.3d 500, 511 (5th Cir. 2004) (en banc).

As to the issue of deceit, after Officer Rodriguez ran the criminal history and immigration checks in the patrol car and returned and confronted Soriano with the fact that he had lied about his most recent arrest, he acted confused about her questions. Officer Rodriguez told Soriano that she believed that her questions had been clear and that Officer Ramirez agreed that her questions were clear. In actuality, however, the extent of the interaction between Officers Rodriguez and Ramirez was limited to Rodriguez remarking "seems kind of weird" and Ramirez responding "yes." In other words, Officer Ramirez never explicitly told Officer Rodriguez that he believed that her questions were clear. Soriano argues that Rodriguez used this misrepresentation of unanimity to pressure him and that doing so amplified the coercive nature of her accusations.

The district court determined that Officer Rodriguez's statement to Soriano, despite being untruthful, was not the type of "trickery" this court has deemed a coercive tactic. Additionally, the district court observed that the statement was meant to ensure that Soriano understood Officer Rodriguez throughout the entire stop and to prompt him to answer truthfully—not to pressure him to consent to the search. We agree.

The video footage of the encounter makes clear that although both officers were present, Officer Ramirez never directly questioned or was involved in questioning Soriano. *See Perales*, 886 F.3d at 548 (recognizing that presence of multiple officers can be a factor in determining coerciveness but finding that the presence of the second officer did not apply because he was not involved in the traffic stop). Moreover, Soriano does not challenge the district court's finding that Officer Rodriguez's statement was intended to ensure that Soriano understood her and to prompt his truthfulness but not to pressure him to consent to the search. Soriano has failed to show that the district court clearly erred in holding that this factor weighed in favor of a finding of voluntariness.

### C. Cooperation with the Police

Cooperation by the defendant is a factor favoring a finding that consent was voluntary. *See United States v. Yeagin*, 927 F.2d 798, 801 (5th Cir. 1991). The district court adopted the MJ's conclusion that Soriano was more cooperative than not and that this factor weighed in favor of voluntariness. We agree.

In addition to opening his trunk after Officer Rodriguez requested that he do so, Soriano also allowed her to test the tint of his driver's side window and showed her the top layer of clothes in his suitcase when she asked what was inside of it. Although Officer Rodriguez pointed out several instances where Soriano expressed nervousness, she also noted that he

appeared to be calm and cooperative at several other points during the encounter. Thus, viewing the evidence in the light most favorable to the Government, *see Santiago*, 410 F.3d at 197, the finding that Soriano "was more cooperative than not," is plausible, *see Zavala*, 541 F.3d at 574, and its conclusion that this factor weighed in favor of voluntariness was not clear error.

### D. Right to Refuse Consent

An officer's failure to inform a suspect that he has a right to refuse to consent to a search militates against voluntariness. *United States v. Shabazz*, 993 F.2d 431, 438–39 (5th Cir. 1993). The district court adopted the MJ's determination that Officer Rodriguez never informed Soriano of his right to refuse consent and that factor weighed against voluntariness. The Government does not directly challenge this determination but contends that Soriano's experience with law enforcement should offset the amount of weight for this factor.

In *United States v. Ponce*, 8 F.3d 989, 998 (5th Cir. 1993), we held that "experience in the criminal justice system can offset 'any weight' accorded to an officer's failure to advise a suspect of his right to resist a search." *Id.* Here, Soriano's presentence report (PSR) indicates that, while he has no prior convictions, he has been arrested on three occasions. Still, neither the MJ nor the district court made any findings as to whether Soriano's criminal history would provide him with enough familiarity with the criminal justice system to result in his knowledge of the right to refuse consent. Because the extent of Soriano's familiarity with law enforcement procedures and its impact on his actions is unclear, the Government has not shown that the MJ clearly erred in determining that this factor weighed against voluntariness.

No. 19-50832

*E. Education and Intelligence*

The district court found that Soriano's education, although limited, did not indicate that he was susceptible to coercion. The court further observed that Soriano's previous interactions with police indicated that he was not a newcomer to the law. Moreover, Soriano's helpful demeanor during the stop, his interaction with the police, and his testimony indicated that he was at least of average intelligence. On these grounds, the district court concluded that this factor weighed "marginally in favor of voluntariness." We agree.

Soriano was 37 years old at the time of his arrest and had completed six years of formal education in Mexico. Officer Rodriguez testified that Soriano seemed able to understand and answer her questions. Our review of the transcript of the traffic stop confirms that Soriano was responsive to Officer Rodriguez's questions and understood the import of the traffic stop. For these reasons, we conclude that the district court's finding that Soriano was at least of "average intelligence" was plausible. Accordingly, its determination that this factor "weighs marginally in favor of voluntariness" was not clear error.

*F. Belief that No Incriminating Evidence will be Found*

An awareness or belief that no incriminating evidence will be found weighs in favor of a finding of voluntariness. *See Shabazz*, 993 F.2d at 439. Consequently, an awareness or belief that some incriminating evidence will be found weighs against a finding of voluntariness.

The record arguably supports the finding that Soriano did not believe that any incriminating evidence would be found if his car was searched. As noted, Officer Rodriguez asked Soriano "Do you give me permission to check the car?" and he replied, "Check it." She continued "If I call the dog right now from the checkpoint, do you think it will alert?" Soriano

responded, "No, you can bring him." Likewise, the district court opined that at the time of consent, Soriano had already opened his suitcase to show the officers its contents and that it was possible that he believed a search would not reveal the cocaine because he had already exposed the contents of the suitcase. Nevertheless, the district court still agreed with the MJ's conclusion that this factor weighed "marginally" against a finding of voluntariness given the lack of evidence on this point. *See United States v. Kelley*, 981 F.2d 1464, 1471 (5th Cir. 1993). Because this conclusion is plausible given the limited record, there was no clear error. *Zavala*, 541 F.3d at 574.

## III. Conclusion

Our review of the video, the transcript, and the complete record confirms that the district court carefully analyzed the controlling six-factor balancing test in view of the evidence presented to it. Its analysis was methodical and not skewed one way or the other. In sum, the district court's analysis of the consent factors was "plausible in light of the record as a whole." *Id*. Accordingly, we hold that the district court did not clearly err in concluding that Soriano voluntarily consented to the search of his vehicle. The district court's denial of Soriano's motion to suppress is AFFIRMED.