# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 26, 2022

Lyle W. Cayce
Clerk

No. 21-50458

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

AKEEM DE'QUAN HUGHES,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
No. 6:20-CR-132

Before JOLLY, SMITH, and ENGELHARDT, *Circuit Judges*.

PER CURIAM:[*]

Akeem Hughes pleaded guilty of being a felon in possession of a firearm. The government sought and received a sentencing enhancement on the premise that Hughes had also been engaged in drug distribution. He appeals that determination as clearly erroneous. We disagree and therefore affirm.

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 21-50458

I.

Police contacted Hughes in response to a call from someone who complained that Hughes had stolen his gun. Hughes admitted to possessing the gun but claimed that the caller, a friend of his, had given it to him as collateral for a $100 loan. Hughes was never charged with theft, but a computer search revealed that he had felony convictions. Police therefore arrested him as a felon in possession of a firearm. A search of his person revealed 5.5 grams of methamphetamine in a single baggie, six Adderall capsules (3.4 grams) in another baggie, a glass pipe with white residue, and an undisclosed amount of "US currency."

Hughes pleaded guilty of unlawful possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). The state also charged him with drug possession, but that proceeding is not at issue here.

In addition to accounting for Hughes's acceptance of responsibility and criminal history, the presentence investigation report proposed a four-level sentencing enhancement for possession of a firearm in connection with another felony offense. The enhancement increased Hughes's maximum guideline sentence by over a year. Hughes objected to the enhancement, but the government averred that he had been engaged in the felony of drug distribution. If that was true, then the connection between the offense and his firearm could be legally presumed. *United States v. Jeffries*, 587 F.3d 690, 692–93 (5th Cir. 2009).[1]

At sentencing, Hughes and the government contested whether the evidence suggested that he was a drug dealer. The government relied

---

[1] If, to the contrary, Hughes was only engaged in the felony of drug possession, there would be no presumed connection, and the government would have to prove that his possession of a firearm facilitated his possession of the drugs. *See Jeffries*, 587 F.3d at 692–93. The government has not offered such proof.

exclusively on the amount of drugs—5.5 grams of meth and 3.4 grams of Adderrall capsules—in Hughes's possession. The government offered to provide testimony that those amounts are "consistent with distribution." But the district court deemed that exercise unnecessary. Instead, it suggested that any amount of meth above five grams creates "almost a presumption" and "rings the bell to be a distributable amount." The court therefore denied Hughes's objection and sentenced him to forty-six months' imprisonment, the top of the guideline range.

## II.

Hughes timely objected to the sentencing enhancement, meaning that he is spared from the burdens of plain-error review. But as he concedes, "[t]he district court's determination of the relationship between [a] firearm and another offense is a factual finding" and is therefore reviewed for clear error. *United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010). That is a highly deferential standard—it means that we must affirm if the district court's finding is "plausible in light of the record as a whole." *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009) (internal quotation marks and citation omitted).

The district court's determination was based on a preponderance-of-the-evidence standard, with the burden on the government. *See United States v. Rivera Juarez*, 626 F.3d 246, 251 (5th Cir. 2010). Thus, this court must affirm if it is plausible that the government has shown, by a preponderance of the evidence, that Hughes was engaged in drug distribution.

## III.

The standard of review resolves this case. "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th

Cir. 1988).  That deferential posture is born of respect for the principle that "[t]he trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).  It is not our place to "duplicate the role of the lower court." *Id.* at 573.

Thus, we need not conclude that the district court was likely correct. The court was apparently under the impression that five grams of meth created a legal presumption that Hughes was engaged in drug distribution.  If that was the reasoning, that court was mistaken.  Five grams of meth does clear a sentencing threshold under 21 U.S.C. § 841(b)(1)(B)(viii).  But the amounts listed in that statute establish *penalties*, not legal presumptions of intent to distribute; the statute defines unlawful acts in a separate subsection, 21 U.S.C. § 841(a).  Nor are we aware of any other authority drawing bright lines between distributable and non-distributable drug quantities.  Even if one ignored that problem, the amount shown in § 841 refers to actual (that is, pure) meth, *see, e.g.*, *United States v. Koss*, 812 F.3d 460, 468 (5th Cir. 2016), but the record does not reflect any purity determination of Hughes's supply. Nor does it specify how much amphetamine his six capsules of Adderall contained.

The facts that are in the record leave room to doubt that Hughes was engaged in drug distribution.  As the government conceded before the district court, Hughes's possession of a meth pipe with residue is consistent with his story that he was using the drugs himself.  Moreover, Hughes did not possess scales, cutting agents, or similar tools of the trade that courts sometimes use to infer involvement in drug trafficking.  *See, e.g.*, *United States v. Clay*, 796 F. App'x 194, 196 (5th Cir. 2019) (per curiam); *United States v. Bass*, 996 F.3d 729, 743 (5th Cir. 2021).  If this court were addressing Hughes's objection to the sentencing enhancement *de novo*, our decision might be different.

No. 21-50458

Despite these observations, this fish is only recently deceased. The amount of drugs in Hughes's possession was not large, but this court has occasionally affirmed findings based on similar quantities of comparable drugs.[2] Hughes points to an out-of-circuit decision noting expert testimony that 5.7 grams of meth could have been for only personal use. *See United States v. Eastom*, 320 F. App'x 879, 886 (10th Cir. 2009). But even in that case, one of the experts testified that the meth was more likely for distribution. *See id.* And although some of the circumstantial evidence favors Hughes, it remains true that he possessed drugs and a firearm in close proximity and that he possessed two different (if similar) kinds of drugs. *Cf. Clay*, 796 F. App'x at 196 (proximity to weapons); *Brown*, 797 F. App'x at 859 (different types of drugs). That evidence provides some support for the government's position that Hughes was more likely than not engaged in distribution.

Thus, though the record could be read to favor Hughes's position, the district court's conclusion remains plausible in light of the whole record. That is the only inquiry we may conduct. The judgment is AFFIRMED.

---

[2] *See United States v. Freeman*, No. 20-50181, 2021 U.S. App. LEXIS 20431, at *11 (5th Cir. July 9, 2021) (per curiam) (unpublished) (four grams of crack cocaine); *United States v. Brown*, 797 F. App'x 854, 859 (5th Cir. 2020) (per curiam) (roughly seven grams total of three different drugs).