# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 27, 2024

Lyle W. Cayce
Clerk

No. 24-50249
Summary Calendar

———————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Brayan Josue Campos-Sanchez,

*Defendant—Appellant*.

———————————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:21-CR-1923-1

———————————————————————————

Before Wiener, Ho, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Brayan Josue Campos-Sanchez entered a conditional guilty plea to conspiracy to transport illegal aliens. He reserved the right to appeal the partial denial of his motion to suppress evidence, in which he urged the district court to suppress the evidence obtained following an investigatory stop of his vehicle and two consent searches of his cell phone, as well as his

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

post-arrest statements and the evidence related to the illegal aliens. According to him, border patrol agents violated his Fourth and Fifth Amendment rights by (1) stopping him without reasonable suspicion of criminal activity, (2) deliberately employing a two-step interrogation strategy designed to coerce his postwarning confession, and (3) searching his cell phone without his voluntary consent.

A reasonable view of the evidence supports the conclusion that the stop of Campos-Sanchez's car was justified. *See United States v. Bass*, 996 F.3d 729, 737 (5th Cir. 2021). In the context of this roving border patrol stop, the proximity to the border, the characteristics of the area, the usual traffic patterns of the road, the agent's prior experience, and information about recent alien smuggling all weigh in favor of reasonable suspicion. *See United States v. Galvan-Torres*, 350 F.3d 456, 457-58 (5th Cir. 2003); *see also United States v. Villalobos*, 161 F.3d 285, 289 (5th Cir. 1998); *United States v. Nichols*, 142 F.3d 857, 871 (5th Cir. 1998). Likewise, "the time of day" and "the behavior of the driver or *drivers*" weigh in favor of reasonable suspicion as well. *United States v. Rogers*, 719 F.2d 767, 771 (5th Cir. 1983) (emphasis added); *see also Galvan-Torres*, 350 F.3d at 458.

Contrary to his position, the testimony at the suppression hearing supports the inference that Campos-Sanchez and his codefendant had been traveling in tandem. *See Bass*, 996 F.3d at 736-37. Specifically, they were driving together around 1:00 AM about eight to nine miles from the border in an area known for smuggling, and there is a reasonable inference that they had avoided a border patrol checkpoint to take a route favored by alien smugglers shortly before the stop. After a border patrol agent began following the two vehicles, the codefendant began driving erratically. For these reasons, Campos-Sanchez's reliance on *United States v. Rangel-Portillo*, 586 F.3d 376 (5th Cir. 2009), is misplaced, as there are "connecting factors" in this case reasonably establishing that the two vehicles' traveling in tandem

was suspicious. *Rangel-Portillo*, 586 F.3d at 382 (internal quotation marks and citation omitted); *see Galvan-Torres*, 350 F.3d at 458. Further, the stop in *United States v. Melendez-Gonzalez*, 727 F.2d 407, 409, 412 (5th Cir. 1984), where there was no erratic driving, was over 50 miles from the border, and proximity to the border is "paramount" to our analysis. *United States v. Olivares-Pacheco*, 633 F.3d 399, 402 (5th Cir. 2011) (internal quotation marks and citation omitted). To the extent that Campos-Sanchez points to certain missing factors, we are unpersuaded by his argument in light of the low threshold for a reasonable suspicion finding, *see United States v. Smith*, 952 F.3d 642, 648 (5th Cir. 2020), and the totality of the circumstances, *see Galvan-Torres*, 350 F.3d at 458. In sum, we have affirmed reasonable suspicion findings in similar circumstances, and we do so again here. *See Rogers*, 719 F.2d at 771; *Galvan-Torres*, 350 F.3d at 458.

In addition, there is no evidence that the agents deliberately attempted to circumvent the requirements of *Miranda v. Arizona*, 384 U.S. 436 (1966), by employing a question first, warn later interrogation strategy. *See Bass*, 996 F.3d at 736-37. Accordingly, the admissibility of the postwarning statements is governed by *Oregon v. Elstad*, 470 U.S. 298 (1985). *See United States v. Courtney*, 463 F.3d 333, 338 (5th Cir. 2006). We reject Campos-Sanchez's position that his prewarning statements were involuntary because he was handcuffed in the back of the agent's patrol vehicle. *See United States v. Cardenas*, 410 F.3d 287, 295 (5th Cir. 2005). The record establishes that he was not threatened, and at one point during the first interrogation, Campos-Sanchez stopped cooperating with the agent, which cuts against the conclusion that the first interrogation took place in a coercive environment. *See United States v. Lim*, 897 F.3d 673, 692 (5th Cir. 2018). His prewarning statements were also not used against him during the second interrogation at the border patrol station, where he denied being threatened and appeared to willingly waive his *Miranda* rights. For all these reasons, the district court

did not err in declining to suppress Campos-Sanchez's postwarning statements at the patrol station. *See Courtney*, 463 F.3d at 338; *Elstad*, 470 U.S. at 314, 318.

As to the consent searches, Campos-Sanchez's arguments fail largely for the same reasons provided above. The circumstances of his initial detention were not coercive: he denied being threatened; he willingly unlocked the cell phone himself; he was aware of his right to refuse consent and, in fact, exercised that right. He also testified that he consented to the search while in the patrol vehicle because he "had nothing to hide." Thus, the district court did not err in concluding that the first consent search was voluntary. *See United States v. Escamilla*, 852 F.3d 474, 483-84 (5th Cir. 2017). Accordingly, we reject Campos-Sanchez's brief assertion that the second consent search was tainted by any coercion from the first. *See United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010). Finally, because he voluntarily consented to both searches, we do not reach his remaining arguments that the evidence derived from those searches should be suppressed.

The order of the district court is AFFIRMED.